**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-13851

————————————

ROBERT S. MARTIN,

   as a Trustee of (i) the Martin 2008-A Investment Trust, (ii)
   as a Trustee of the Martin 2013-A Investment Trust, (iii)
   as a Trustee of the RPM 2005 Family Trust, and (iv)
   as a Trustee of the RSM 1988 Trust,
   in his individual capacity,

   *Plaintiff-Third Party Defendant-Counter Defendant-Appellee,*

JOHN AND JANE DOES 1-3,

   as unknown trustees of (i) the Martin 2008-A Investment Trust,
   (ii) Martin 2013-A Investment Trust, and (iii) RSM 1988 Trust,
   the Martin 2008-A Investment Trust,
   the Martin 2013-A Investment Trust;
   the RPM 2005 Family Trust; and the RSM 1988 Trust,

   *Third Party Defendant,*

*versus*


ERIC BISCHOFF,

   *Defendant-Third Party Plaintiff-Counter Claimant-Appellant.*

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01045-MSS-AAS

———————————————

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

ABUDU, Circuit Judge:

This appeal involves feuding family members who are descendants of the founders of Boar's Head Provisions Company (the "Company"). To maintain control of the Company, the family entered into a shareholder's agreement that specifies how and to whom Company shares may be distributed. When one of the shareholding family members made three transfers of shares to his son—in 2011, 2013, and 2016, respectively—his cousin objected, contending the transfers violated the shareholder's agreement. The cousins ultimately took their feud to court.

The district court held that all three transfers were valid because the relevant statute of limitations barred challenge to the 2011 transfer, and the 2011 transfer, in turn, legitimized the 2013 and 2016 transfers. The losing cousin now appeals, arguing in part that the district court erred in determining that all three transfers were valid without first assessing whether the time-barred 2011 transfer, as the transfer that legitimized the others, complied with the shareholder's agreement.

Unfortunately for this family, their feud does not end here. After carefully reviewing the record, and with the benefit of oral argument, we affirm the district court in part but vacate its

conclusions on the validity of the 2013 and 2016 transfers and remand for further proceedings.

## I.    BACKGROUND

### A. Factual Background

In 1933, two brothers-in-law—Frank Brunckhorst and Bruno Bischoff—founded Boar's Head Provisions Company. They left control of the Company to their descendants. One of those descendants was Alvina Martin, Bruno Bischoff's daughter. The relevant parties are both related to Alvina: Robert S. Martin is Alvina's son and Eric Bischoff is Alvina's nephew. Robert and Eric are first cousins.

In 1991, the descendants who held Company shares—including Robert and Eric—entered into the Shareholder's Agreement and Irrevocable Trust (the "Agreement"), which remains operative today. The Agreement's stated purpose is to maintain ownership and control of the Company among the shareholding descendants. The Agreement places the shareholding descendants into two categories: Group A Shareholders (which includes descendants unrelated to this appeal) and Group B Shareholders (which includes "the Alvina Martin 1988 Trust," Robert, and Eric).

Paragraph 3 of the Agreement prohibits the Shareholders from transferring their shares. The provision stipulates that all transfers are "void" and "immediately" gives the Company and other Shareholders the option to purchase the transferred shares. There are limited exceptions to the prohibition. The relevant exception here is found in section 3(b)(ii), which states:

4                          Opinion of the Court                          23-13851

[A] Group B Shareholder may at any time sell or otherwise transfer any or all of its or his Shares to any other Group B Shareholder, any other member of Alvina Martin's immediate family (including nieces and nephews but excluding Robert A. Martin)[1] who is an Active Employee, a trust for the benefit of such Group B Shareholder or such permitted transferee, or to a beneficiary of the Alvina Martin 1988 Trust to whom Shares are permitted to be transferred under the terms of the Trust Agreement creating such Trust as in effect on the date hereof[.]

If the transferee is within one of the permitted categories of persons, then they take the shares subject to the terms of the Agreement as if they were a Group B Shareholder.

In 2005, Robert created a trust for his son, Robert P. Martin ("RPM"). Between 2011 and 2016, Robert made three transfers of Company shares to RPM's trust. The first transfer of 2.4 shares occurred on September 14, 2011. The second transfer of 480 shares occurred on December 31, 2013. The third transfer of 240 shares occurred on April 7, 2016.

---

[1] Robert A. Martin was Alvina Martin's husband and Robert S. Martin's father. In total, there are three Roberts mentioned in this appeal: Robert A. Martin, Robert S. Martin, and Robert P. Martin—representing three generations of Roberts.

### B. Procedural Background

In October 2019, Eric served Robert with a demand for arbitration, alleging that the three transfers from Robert to RPM's trust were invalid under the Agreement. In response, Robert filed a declaratory judgment action in district court, requesting the court deem the transfers valid. The parties later entered into an interim settlement agreement that resulted in the dismissal of both their actions without prejudice.

After the period for the interim settlement agreement expired, Robert filed the declaratory judgment action underlying this appeal. Robert requested the district court declare that: (1) the terms of the Agreement permitted the 2011, 2013, and 2016 transfers to RPM's trust; (2) the statute of limitations barred Eric from challenging the 2011 transfer and, therefore, the 2013 and 2016 transfers were valid; (3) Eric waived or was estopped from asserting any right to challenge the transfers; and (4) Eric had no legal or equitable right to any of the transferred shares.

Eric counterclaimed. He alleged that all three transfers breached the Agreement and sought a declaratory judgment that: (1) neither RPM nor a trust for RPM were permissible transferees under paragraph 3(b) of the Agreement; (2) the transfers were void *ab initio*; (3) Eric had the right to immediately acquire the shares; and (4) Robert and RPM must immediately offer to sell him the shares.

6                          Opinion of the Court                  23-13851

### i.  Motions for Summary Judgment

At the close of discovery, Robert moved for summary judgment.  His primary argument was that the statute of limitations barred Eric from challenging the 2011 transfer, which in turn prevented Eric from challenging the 2013 and 2016 transfers.  Robert reasoned that the 2011 transfer resulted in his son becoming a Group B Shareholder under the Agreement, thus making his son a permissible transferee.  He relied on paragraph 3(b)(ii)'s provision that a transferee takes the shares subject to the Agreement as if they were a Group B Shareholder.  Thus, Robert argued that the statute of limitations, which barred challenge to the 2011 transfer, similarly barred Eric from challenging RPM's status as a permissible transferee for the subsequent 2013 and 2016 transfers.  Alternatively, Robert argued that regardless of the time-bar, RPM was a permissible transferee under paragraph 3(b)(ii) because RPM is a beneficiary under the Alvina Martin 1988 Trust, and an immediate family member of Alvina Martin who works for the Company.[2]

Shortly after, Eric moved for partial summary judgment, requesting the district court find that the three transfers were not permitted because RPM was not a permissible transferee under the Agreement.  Eric argued that neither RPM nor a trust for RPM complied with 3(b)(ii)'s immediate family member or beneficiary

---

[2] Robert presented an additional alternative argument, asserting that Eric did not comply with the Agreement's time limit to assert a right to purchase the contested shares, which prevented him from challenging the transfers.

of Alvina Martin's 1988 Trust exceptions based on the dictionary definition of "immediate family" and the terms of Alvina's trust.

Eric also filed a brief in opposition to Robert's motion. Importantly, Eric argued that the statute of limitations did not prevent the court from evaluating whether the 2011 transfer and related transfer documents complied with the Agreement. He alleged that one of his requests was for the court to declare the transfer impermissible from the start, which was a "right" that did not implicate the time-barred "remedy" of purchasing the disputed shares. Alternatively, Eric argued that equitable estoppel prevented Robert from depending on the statute of limitations. He alleged that Robert concealed the 2011 transfer and, therefore, statutory tolling should not have begun at the moment the transfer occurred.

### ii.  District Court Order

The district court agreed with Robert, granting in part and denying as moot in part his motion for summary judgment. The court first determined that under New York law, which governed the terms of the Agreement, a challenge to the 2011 transfer was barred by the six-year statute of limitations for breach of contract claims. The court reasoned that the limitations period began in 2011 when the transfer occurred, but Eric did not file his Notice of Arbitration until 2019—two years after the limitations period expired. Thus, Eric was foreclosed from bringing his breach of contract counterclaim regarding the 2011 transfer.

The district court then detailed why it could not grant Eric's requested declaratory relief regarding the 2011 transfer. The court

concluded that a declaration that the 2011 transfer violated the Agreement was a breach of contract issue and, thus, subject to the six-year statute of limitations. It explained that Eric's request would require it "to interpret the Shareholder's Agreement, specifically paragraph 3(b)," which it believed it could not do based on the statute of limitations. Since "Eric [] admitted . . . that the Shareholder's Agreement is 'a valid and enforceable contract,'" the court granted summary judgment for Robert, declaring that the statute of limitations barred Eric from asserting both his breach of contract and declaratory judgment claims for the 2011 transfer.[3]

Next, the district court rejected Eric's equitable estoppel argument. The court found that Eric waived an equitable estoppel defense by not asserting it in his answer to the complaint. The court further found that, even assuming Eric could raise the defense, he failed to create a genuine issue of material fact as to all the required elements because he did not put forth evidence of Robert's misrepresentations or affirmative wrongdoing that caused his untimely action.

Finally, the district court granted summary judgment for Robert regarding the validity of the 2013 and 2016 transfers. The court addressed Robert's argument that the time-barred 2011 transfer made his son a Group B Shareholder under the Agreement and Eric's opposing arguments. The court found Eric's counter

---

[3] Because the district court found that the statute of limitations prevented Eric from challenging the 2011 transfer, it denied as moot Robert's request for declaratory judgment regarding the validity of the transfer.

arguments unpersuasive. It then reiterated its holding that it was "barred from making the specific finding that the 2011 Transfer was valid," but concluded that "[Eric's] challenges to the 2013 and 2016 Transfers fail[ed] because RPM is now conclusively established as a Group B Shareholder at the time of the 2013 and 2016 Transfers." To support its holding, the court relied on the transfer agreement Robert and RPM executed. The court also relied on paragraph 3(b) of the Shareholder's Agreement. Specifically, the court noted that paragraph 3(b) stated that the transferee takes the shares subject to the Agreement "as if such transferee were a . . . Group B Shareholder." Thus, the court reasoned that "according to paragraph 3(b)," RPM "was effectively an owner of [the 2011 shares] as a Group B Shareholder." As a result, the court found that the 2013 and 2016 transfers were authorized by the Agreement because they "involved the transfer of shares between two Group B Shareholders."

In sum, the district court precluded Eric from challenging the 2011, 2013, and 2016 transfers. Eric timely filed this appeal.

## II.    STANDARDS OF REVIEW

We review the district court's grant of Robert's motion for summary judgment *de novo*, meaning we allot no deference to the district court's decision and apply anew the same legal standards that governed its review. *Altman Contractors, Inc. v. Crum & Forster Specialty Ins.*, 832 F.3d 1318, 1321 (11th Cir. 2016). Summary judgment is proper if Robert shows that there is no genuine dispute of material fact and he is entitled to judgment as a matter of law. *Id.*

at 1321–22 (first citing *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1293–94 (11th Cir. 2013); and then citing Fed. R. Civ. P. 56(a)).  Interpretation of the Agreement is also reviewed *de novo*.  *Id.* at 1322 ("Contract interpretation and statutory construction present questions of law subject to plenary review.").

## III.   DISCUSSION

Eric challenges the entirety of the district court's findings, but the crux of his argument is that the district court erred in holding that the 2011 transfer established RPM as a Group B Shareholder, which in turn validated the later transfers.  As he did below, Eric argues that even if he is statutorily barred from challenging the 2011 transfer, he still has the "right" to have the court evaluate whether the 2011 transfer complied with the Agreement, even if his "remedy" of buying the contested shares is foreclosed.  Eric's "rights" and "remedies" argument is perhaps overinclusive, but it uncovers an error in the district court's analysis that warrants remand.

We begin by affirming the district court's finding that Eric is barred from challenging the 2011 transfer and conclude by discussing the district court's error in evaluating the 2013 and 2016 transfers.

### A.  *The district court did not err in finding that Eric cannot challenge the 2011 transfer.*

The parties agree that New York law governs this dispute. Under New York law, a cause of action for a breach of contract claim is governed by a six-year statute of limitations.  *See* N.Y.

C.P.L.R. § 213(2).  Ordinarily, the cause of action accrues "at the time of the breach, even when no damage occurs until later, and even though the injured party may be ignorant of the existence of the wrong or injury." *Kaul v. Brooklyn Friends Sch.*, 198 N.Y.S.3d 380, 382 (N.Y. App. Div. 2023) (first quoting *Houtenbos v. Fordune Ass'n, Inc.*, 160 N.Y.S.3d 57, 62 (N.Y. App. Div. 2021); and then citing *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y. 1993)).

However, when applicable, the doctrine of equitable estoppel can delay the start of the limitations period.  *Niagara Mohawk Power Corp. v. Freed*, 733 N.Y.S.2d 828, 829 (N.Y. App. Div. 2001). Equitable estoppel is considered an "extraordinary remedy" that applies only when the party raising the defense can show that the opposing party fraudulently misrepresented the breach to prevent them from filing a claim.  *Pulver v. Dougherty*, 871 N.Y.S.2d 495, 496 (N.Y. App. Div. 2009).  If the only basis for an equitable estoppel argument is the opposing party's failure to disclose the breach, the doctrine does not apply unless a fiduciary duty exists between the parties.  *Zumpano v. Quinn*, 849 N.E.2d 926, 930 (N.Y. 2006).

Additionally, in conformity with basic principles of contract law, contracts that are void for public policy reasons are not enforceable.  *See generally* RESTATEMENT [SECOND] OF CONTRACTS § 178; *New Brunswick Theological Seminary v. Van Dyke*, 125 N.Y.S.3d 153, 159 (N.Y. App. Div. 2020).  Thus, the statute of limitations does not apply to challenges to alleged unlawful contracts.  *Riverside Syndicate, Inc. v. Munroe*, 882 N.E.2d 875, 878 (N.Y. 2008) (clarifying

that "[a statute of limitations] does not make an agreement that was void at its inception valid by the mere passage of time").

Eric argues that his challenge to the 2011 transfer and its associated transfer documents is not subject to the statute of limitations because the transfer was void *ab initio*—that is, from the start. He contends that the "shall be void" language in paragraph 3 of the Agreement means that noncompliant transfers are never enforceable. In support of his interpretation, Eric cites *Genger v. Genger*, No. 651089/2010, 2015 WL 112831, at \*11 (N.Y. Sup. Ct. Jan. 7, 2015).

*Genger* is a New York case that, like this case, deals with a family feuding over company shares. *Id.* at \*1–3, 14. In *Genger*, a divorce settlement required a father to transfer company shares to trusts for his son and daughter. *Id.* at \*2. The transfers, which occurred in 2004, violated a stockholder's agreement between the father and a third-party shareholder. *Id.* The stockholder's agreement specified that noncompliant transfers would be rendered "void." *Id.* at \*1. In 2008, the third-party shareholder enforced its contractual right to challenge the transfer and subsequently acquired the contested shares. *Id.* at \*2–3. The son, alleging that the father failed to disclose the shareholder's agreement during the divorce settlement, sued the father on several grounds. *Id.* at \*11. The court found that the son's challenge failed since "the 2004 transfers were void because they violated the stockholder's agreement." *Id.*

Eric incorrectly interprets *Genger* to stand for the proposition that agreements which include the word "void" automatically

invalidate noncompliant transfers. *Genger* stands for no such proposition. The third-party shareholder in *Genger* challenged the contested 2004 transfers in 2008, which was within the six-year statute of limitations period for breach of contract claims. Thus, the third-party shareholder could only enforce the "void" language in the shareholder's agreement because they timely raised their challenge. This is evident through the parties conceding, and the court acknowledging, that the 2004 transfers were "judicially voided." *Id.* at *4. In other words, the "void" language in the shareholder's agreement gave the third-party shareholder the right to challenge the transfers, but that challenge was still subject to the statute of limitations. Allowing parties to contractually circumvent the statute of limitations by inserting "void" terminology would go against the purpose of enacting statutory bars. *See Zumpano*, 849 N.E.2d at 928–29 ("Although sometimes imposing hardship on a plaintiff with a meritorious claim, statutes of limitations reflect the legislative judgment that individuals should be protected from stale claims. They cannot be deemed arbitrary or unreasonable solely on the basis of a harsh effect." (internal citation and quotations omitted)); *see also John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979) (explaining that parties cannot contractually agree to waive or extend a statute of limitation in advance of liability).

Furthermore, Eric's argument that he is challenging the transfer documents that evidenced the 2011 transfer and not the Agreement itself also fails. Even assuming Eric is correct that the district court should have considered his challenge to the transfer

documents, the transfer documents are still subject to the statute of limitations. Eric acknowledges that the transfer documents are void only by reference to the Agreement. That is, unlike the contracts in the cases Eric cites for support of his argument, the transfer documents in and of themselves are not facially void for violating public policy. *See Riverside*, 882 N.E.2d at 878 (finding the statute of limitations does not apply to bar a challenge against a lease that violated rent stabilization laws); *see also Pacchiana v. Pacchiana*, 462 N.Y.S.2d 256, 258 (N.Y. App. Div. 1983) (acknowledging that the statute of limitations would not apply to an antenuptial agreement that violated state recording acts); *In re 1650 Realty Assocs., LLC v. Golden Touch Mgmt., Inc.*, No. 0054082011, 2012 WL 12878252, at *5–6 (N.Y. Sup. Ct. Nov. 9, 2012) (denying dismissal of a claim because the statute of limitations does not apply when a party alleged the contract was unconscionable). Paragraph 3 of the Agreement is the only authority Eric references to declare the transfer documents void. Consequently, if the statute of limitations bars untimely challenges to "contractual obligation or liability" under the Agreement—as Eric concedes is the case—then it also bars untimely challenges to the documents that evidence a shareholder's violation of the Agreement.

In this case, the statute of limitations bars Eric's ability to hold Robert liable for his alleged violation of the Agreement in 2011. New York law required Eric to bring his claim within six-years of the alleged breach even if he was unaware of the breach at the time it occurred. *See* N.Y. C.P.L.R. § 213(2); *see also Kaul*, 198 N.Y.S.3d at 382. Eric did not raise his challenge to the 2011

23-13851              Opinion of the Court                    15

transfer until 2019, which is two years past the six-year statutory period.  Therefore, the district court did not err in holding that the statute of limitations barred Eric from challenging the 2011 transfer.

We also find no error with the district court's conclusion that Eric failed to satisfy the elements required for an equitable estoppel defense.  The record does not reveal evidence of actual misrepresentations Robert made concerning the 2011 transfer that induced Eric to delay filing a claim.  *Niagara Mohawk Power Corp.*, 733 N.Y.S.2d at 829–30.  Eric claims that he learned of the 2011 transfer in 2015, but he does not allege that his delayed awareness was because of Robert's deception.  Even assuming that Robert had a fiduciary duty to disclose the 2011 transfer, Eric does not demonstrate how Robert's failure to inform him of the 2011 transfer impacted his ability to file suit once he became aware of the transfer in 2015, which was within the six-year statute of limitations.  *See Zumpano*, 849 N.E.2d at 930 (finding the plaintiff's fiduciary duty defense failed where the plaintiff did not demonstrate how the defendant's failure to inform them of certain facts contributed to their delay in bringing an action before the running of the statute of limitations).  Thus, we affirm the district court's rulings on the 2011 transfer.[4]

_____

[4] Eric also argues that the district court abused its discretion by preliminarily finding that he waived his equitable estoppel defense.  Because we affirm the district court on its alternative holding, we do not address whether its finding of waiver was an abuse of discretion.

### B. The district court erred in its analysis of the 2013 and 2016 transfers.

We now reach the issue that warrants remand. The district court found that Eric could not challenge the 2013 and 2016 transfers "because RPM is now conclusively established as a Group B Shareholder." Yet, the district court never conducted the analysis necessary to determine if RPM was, in fact, a Group B Shareholder.

To start, the 2011 transfer—which is barred from challenge by the statute of limitations—cannot convert RPM into a Group B Shareholder. New York law recognizes that statutes of limitations operate as procedural bars to judicial remedies but have no bearing on the underlying validity of a claim. *Tanges v. Heidelberg N. Am., Inc.*, 710 N.E.2d 250, 253 (N.Y. 1999). As the court in *Tanges* concluded, a statute of limitations bars a "remedy" and not a "right," which is a principle often recognized within the context of debtor-creditor obligations. *Id. See also Johnson v. Albany & Susquehanna R.R. Co.*, 54 N.Y. 416, 427 (N.Y. 1873) (holding that while the statute of limitations barred the creditor's ability to recover a debt, it did not convert the unpaid debt into one that had been discharged); *Hulbert v. Clark*, 28 N.E. 638, 638 (N.Y. 1891) ("The statute of limitations does not, after the prescribed period, destroy, discharge, or pay the debt, but it simply bars a remedy thereon."); *Bank of U.S. v. Rosengarten*, 24 N.Y.S.2d 647, 649–50 (N.Y. Sup. Ct. 1941) (observing that the statute of limitation is a flexible standard created by lawmakers that does not cancel the obligations underlying a claim). Thus, a dismissal based on a statute of limitations is not a ruling on the merits, and it therefore follows that, in general, statutes of

limitations cannot be used as proof of satisfying underlying contractual obligations. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001) (addressing a different issue, but explaining that dismissal based on a statute of limitations does not resolve the substantive merits of a claim).

In this case, the statute of limitations prevents Eric from challenging the 2011 transfer, but it does not establish that the transfer complied with the Shareholder's Agreement. Although the district court acknowledged that it was "barred from making the specific finding that the 2011 Transfer was valid," it nevertheless treated the statute of limitations as legitimizing the 2011 transfer and its associated documents. Once the court concluded that Eric could not challenge the 2011 transfer, it should have independently analyzed the validity of the 2013 and 2016 transfers, which are not time-barred, without relying on the 2011 transfer. Instead, the court improperly assumed the 2011 transfer documents were executed in accordance with the Shareholder's Agreement. That assumption led to its conclusion that RPM was a Group B Shareholder—a conclusion the court made without assessing whether RPM qualified under the Agreement as a person permitted to obtain Group B Shareholder status in the first place.

A part of the reason the district court concluded that the 2011 transfer established RPM as a Group B Shareholder was its interpretation of *Kavanaugh v. Kavanaugh*, 161 N.Y.S.3d 558 (N.Y. App. Div. 2021). Eric cited *Kavanaugh* to argue that RPM could retain the 2011 shares without necessarily becoming a Group B

Shareholder under the Agreement.  The district court disagreed, reasoning that unlike the shareholder agreement in *Kavanaugh*, which limited shareholders to a closed class, the Agreement here permitted the addition of new Group A or Group B Shareholders. Based on that distinction, the district court concluded that anyone holding shares must fall within either the Group A or Group B Shareholder category and, therefore, RPM could not hold shares without gaining Group B Shareholder status.

While the district court may be correct that the Agreement intends for all shareholders to be subject to its terms as if they were a Group A or Group B Shareholder, the Agreement also imposes specific eligibility requirements for obtaining that status.  Therefore, the district court's reasoning that RPM *must* be a Group B Shareholder simply by virtue of holding shares is not necessarily true.  Holding shares does not prove that one is eligible to have shares under the terms of the Agreement, especially in this case where RPM holds shares based on a statutory bar and not the merits of the claim.  The more appropriate approach is to apply a plain reading of the Agreement.  Under its terms, RPM could only become a valid Group B Shareholder if he was either (1) a member of Alvina Martin's immediate family who is an active employee of the Company, or (2) a beneficiary of the Alvina Martin 1988 Trust. The parties thoroughly briefed whether RPM met either of these criteria.  On remand, the district court should address those arguments directly, rather than relying on an incorrect assumption that the statute of limitations necessarily transforms a potentially invalid transfer into a valid one.

## IV.    CONCLUSION

Accordingly, we affirm in part as to the district court's ruling pertaining to the 2011 transfer, but we vacate in part and remand for further findings on the 2013 and 2016 transfers.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**